United States District Court
Southern District of Texas
**ENTERED**
October 09, 2020
David J. Bradley, Clerk



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| RICARDO LOPEZ, JR., | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 7:20-CV-50 |
| | § | |
| RIO GRANDE CITY CONSOLIDATED | § | |
| INDEPENDENT SCHOOL DISTRICT, *et* | § | |
| *al*, | § | |
| | § | |
| Defendants. | § | |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS

### I.    Factual and Procedural Background

Now before the Court is the Motion to Dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) by Defendants Rio Grande City Consolidated Independent School District ("RGCCISD") and Daniel J. Garcia, Eleazar Velasquez, Jr., and Daria Babineaux, individually and in their official capacities as members of the RGCCISD Board of Trustees. (Dkt. No. 6). Through his Original Complaint filed on February 25, 2020, Plaintiff Ricardo Lopez, Jr. seeks to hold Defendants liable under 42 U.S.C. § 1983 for ending his employment with RGCCISD in alleged violation of Plaintiff's rights to due process and freedom of association under the First and Fourteenth Amendments to the U.S. Constitution. (Dkt. No. 1). Plaintiff supports these claims with allegations that Board member President Garcia pressured Plaintiff for personal and political favors, and that when Plaintiff finally turned his allegiance away from the "Team Kid's Choice" political slate which included Garcia, Velasquez, and Babineaux, and towards the rival political group "Team Hope," Defendants retaliated against him by ending his employment, and failed to afford him the requisite notice and opportunity for a hearing before doing so. (*Id.*).

Plaintiff requests actual and compensatory damages, equitable relief in the form of front pay, back pay, and/or reinstatement, exemplary damages, and attorney's fees.  (*Id.*).

Through the instant Motion, Defendants move to dismiss all of Plaintiff's claims for failure to state a claim upon which relief can be granted.  (Dkt. No. 6).  Defendants seek the dismissal of Plaintiff's claims against RGCCISD and the individual Defendants in their official capacities on the grounds that Plaintiff's Complaint lacks allegations of an official policy that adversely affected his employment or violated his constitutional rights, and that the official capacity claims are duplicative of those pursued against RGCCISD.   (*Id.* at § III(A)). Defendants also move to dismiss Plaintiff's individual capacity claims on the asserted basis that Plaintiff fails to identify unconstitutional actions taken by any of the Board member Defendants. (*Id.* at § III(B)).  In the alternative, Defendants assert that Plaintiff does not identify a property interest protected by the due process clause, and even if he does, his due process claims fail in the absence of allegations that he was unable to invoke the available administrative process for contesting the adverse action.  (*Id.* at § III(C)).  Finally, Defendants ask that the Court dismiss Plaintiff's request for punitive (i.e., exemplary) damages, which may not be awarded against RGCCISD.  (*Id.* at § III(D)).  Upon consideration of Defendants' Motion and Plaintiff's response (Dkt. No. 7), in light of the relevant law, the Court finds that Plaintiff's official capacity claims against the individual Defendants must be dismissed as duplicative of those pursued against RGCCISD, and that Plaintiff's request for punitive damages against RGCCISD must also be dismissed on the basis asserted.  Otherwise, the Court must deny the Motion.

## II.    Standard of Review

"Rule 12(b)(6) authorizes the filing of motions to dismiss asserting, as a defense, a plaintiff's 'failure to state a claim upon which relief can be granted,'" and is read in conjunction

with the federal pleading standard. *Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5ᵗʰ Cir. 2019) (quoting FED. R. CIV. P. 12(b)(6)); *see Ashcroft v. Iqbal*, 556 U.S. 662, 677-68 (2009); FED. R. CIV. P. 8(a)(2) ("A pleading that states a claim for relief must contain…a short and plain statement of the claim showing that the pleader is entitled to relief[.]") "Thus, claims may be dismissed under Rule 12(b)(6) 'on the basis of a dispositive issue of law,'" and also "if the complaint does not contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Inclusive Communities Project*, 920 F.3d at 899 (quoting *Neitzke v. Williams*, 490 U.S. 319, 326 (1989); *Iqbal*, 556 U.S. at 678). The "plausibility" standard does not require detailed factual allegations, but a party's "obligation to provide the 'grounds' of his 'entitle[ment]' to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted); *accord Iqbal*, 556 U.S. at 678. To "show" that the pleader is entitled to relief, the well-pleaded facts of the complaint and any other matters properly considered[1] must allow the court, drawing on its "judicial experience and common sense," to infer "more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679.

## III.    Factual Allegations

Plaintiff's Complaint alleges that RGCCISD first hired him on August 13, 2003 as a special education teacher, and that he held various other teaching and coaching positions and maintained "an exemplary employment record" throughout his tenure. (Dkt. No. 1 at ¶¶ 10, 16). In 2016, RGCCISD Board President Garcia "pressured [Plaintiff]…by telling him that he could

---

[1] "Generally, a court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5ᵗʰ Cir. 2011) (quoting *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5ᵗʰ Cir.2008)); *see also Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5ᵗʰ Cir. 2010) (court's review on 12(b)(6) motion "is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint.").

not advance any further within the school district without carrying out [Garcia's] particular personal requests and the requests of his political allies on the school board." (*Id.* at ¶ 11). The political pressure exerted on Plaintiff consisted of Garcia's threats of "withheld promotions and pay raises if [Plaintiff] supported anyone else other than Team Kid's Choice," a political group which included Garcia and additional Board members Velasquez and Babineaux, among others. (*Id.* at ¶¶ 11, 13).  As a result of this pressure, Plaintiff began supporting Team Kid's Choice. (*Id.* at ¶ 11).

In 2017, Garcia pressured Plaintiff to "put in a good word" for Garcia with the family of a criminal defendant arrested for murder, so that the family would hire Garcia to represent the defendant.  (*Id.* at ¶ 12).  Later that same year, Garcia pressured Plaintiff to approach a Starr County judge to request a lower bond for the defendant, who by then had become Garcia's client. (*Id.*).  Plaintiff told his neighbor, the judge's brother, about the errand Garcia had given Plaintiff, and the judge's brother set up an appointment at his house for Plaintiff to "discuss the possibility of lowering the bond" for Garcia's client.  (*Id.*).  After Plaintiff left the appointment,[2] on November 29, 2017, "he was pulled over and arrested by the Starr County Special Crimes Unit at night under allegations that he was attempting to bribe a judge." (*Id.*).  The next morning, RGCCISD police served Plaintiff, in jail, with a letter placing him on administrative leave with pay. (*Id.*).

Plaintiff was never indicted on the allegations against him, and continued to be employed by RGCCISD on a "leave with pay" status for almost a year.  (*Id.*).  During this time, Garcia "distanced himself" from Plaintiff, who allegedly "reached a breaking point" and switched his political allegiance from Team Kid's Choice to Team Hope.  (*Id.* at ¶ 14).  In or around October 2018, after Plaintiff began supporting Team Hope, investigators began questioning RGCCISD

---

[2]  Plaintiff notes that the judge did not attend the appointment.  (Dkt. No. 1 at ¶ 12).

employees and Board members belonging to Team Kid's Choice about Garcia's involvement in the alleged bribe giving rise to Plaintiff's arrest.  (*Id.*).  At the time, Team Kid's Choice had aligned with "Team Onward," whose members included three individuals running for positions on the RGCCISD Board.  (*Id.*).  According to Plaintiff, Team Kid's Choice "held a majority on the school board and [were] angered about the investigation into their political group."  (*Id.*).  "Unbeknownst to [Plaintiff], Team Kid's Choice then immediately asked that [Plaintiff] be placed on the School District agenda in order to retaliate and non-renew/terminate" Plaintiff's employment.  (*Id.*).  Plaintiff continued to be employed by RGCCISD "until the October of 2018 School Board meeting wherein his contract was not renewed."  (*Id.* at ¶ 12).

On or about October 19, 2018, Plaintiff was putting up a Team Hope campaign sign when RGCCISD police, at the direction of Team Kid's Choice Board members, served him with a letter from RGCCISD "stating that he was being unlawfully terminated by nonrenewal of his contract." (*Id.* at ¶ 15).  Plaintiff alleges that "this method of direct service was against school protocol and an improper method of service under School Board rules and regulations," and "was done in such a manner by the Team Kid's Choice members in order to intimidate [Plaintiff] and sensationalize his effective termination."  (*Id.*).  He also asserts that "[t]he timing of the termination makes it clear that RGCCISD board members, a majority of [whom] were members of Team Kid's Choice and who voted to terminate his contract, were acting in political retaliation by unlawfully terminating [Plaintiff] for his failure to support Team Kid's Choice and Team Onward." (*Id.*).  According to Plaintiff, his was one of "numerous staffing changes (promotions and demotions) after Team Kid's Choice gained control of the RGCCISD Board," among them the hiring of a Team Kid's Choice/Team Onward supporter then under indictment for voter fraud.  (*Id.*).

Against this backdrop, Plaintiff challenges the given reasons for the decision, as cited in the letter: (1) that Plaintiff failed to report his arrest for bribery; (2) that the alleged bribery was publicized "valley wide" by a local newspaper and two local television stations; and (3) that Plaintiff had no signed contract with RGCCISD for the 2018-2019 school year.  (*Id.*).  Plaintiff describes the reasons given by the letter as "ludicrous," and reflective of the true, political motivation behind the adverse action, since: (1) RGCCISD's cited reason for placing him on leave with pay the morning after his arrest was that it had been notified of his arrest for bribery, and the alleged bribe involved the sitting President of the RGCCISD Board; (2) the letter did not further explain "how [the bad] publicity might diminish [Plaintiff's] effectiveness in the District," and also "RGCCISD constantly receives negative publicity for its actions with employees"; and (3) it is "unfathomable" to equate the absence of a contract with the inability to grant a contract.  (*Id.*).  Plaintiff also complains that RGCCISD "cited ethics, personal integrity and honesty as reasons for terminating [Plaintiff] when in truth and in fact [its] own Board Members were engaging in dishonesty, lack of personal integrity and a lack of ethics which eventually resulted in [Garcia], the sitting school board President, getting indicted and arrested." (*Id.*).[3]  "And, incredibly, not long after [Plaintiff] was terminated, the RGCCISD [board] members hired [a Team Kid's Choice/Team Onward supporter] who was under indictment for voter fraud at the time she was hired."  (*Id.*).  In light of the above, Plaintiff asserts that RGCCISD retaliated against him "solely for political reasons and not because he had been previously arrested."  (*Id.*).

Plaintiff further alleges that the adverse employment action "was taken in direct contravention of RGCCISD Board policy DCE (Legal), which mandates that before any contractual employee such as Plaintiff is dismissed, 'the employee shall be given reasonable

---

[3] It is unclear whether these reasons were also cited in the letter.

notice of the cause or causes for the termination, set out in sufficient detail to fairly enable him or her to show any error that may exist and the names and the nature of the testimony of the witnesses against [him].'" (*Id.* at ¶ 18). "After the notice of nonrenewal of his contract, [Plaintiff] sent letters to the RGCCISD Superintendent requesting reinstatement," to which Plaintiff received no response, and "[n]o hearing was ever afforded [him] to present his concerns over the nonrenewal/termination of his contract." (*Id.*).

## IV.  Analysis

### A.  Overview of Applicable Law

Section 1983 provides a claim against any "person" who, "under color of any statute, ordinance, regulation, custom, or usage, of any State," violates another's rights under the U.S. Constitution.  42 U.S.C. § 1983.  "Claims under § 1983 may be brought against persons in their individual or official capacity, or against a governmental entity." *Goodman v. Harris Cty.*, 571 F.3d 388, 395 (5th Cir. 2009); *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978) (municipalities and other local government units are "persons" subject to suit under § 1983).  In this case, Plaintiff sues RGCCISD and three members of its Board of Trustees in their individual and official capacities for: (1) violating Plaintiff's First Amendment[4] rights by ending his employment in retaliation for his association with the Team Hope political group; and (2) violating his Fourteenth Amendment right to procedural due process by depriving him of protected property and liberty interests without affording him the requisite pre-deprivation procedures.  (Dkt. No. 1 at ¶¶ 20-30).[5]  To succeed on his retaliation claim, Plaintiff must show

---

[4]  The First Amendment applies to States by virtue of the Fourteenth Amendment.  *E.g.*, *Chiu v. Plano Indep. Sch. Dist.*, 260 F.3d 330, 334 n.8 (5th Cir. 2001) (citing cases).

[5]  Plaintiff's Complaint invokes the substantive protections of the due process clause only once in passing, and since he supports his "denial of due process" claim with allegations that Defendants deprived him of the procedures due, the Court does not construe his pleading to make a substantive due process claim. *See* (Dkt. No. 1 at ¶ 22); *Lewis v. Univ. of Tex. Med. Branch at Galveston*, 665 F.3d 625, 630 (5th Cir.

that: (1) he suffered an adverse employment action; (2) he was engaged in association protected by the First Amendment; and (3) his protected activity was a substantial or motivating factor in the adverse action. *See Burnside v. Kaelin*, 773 F.3d 624, 626 (5th Cir. 2014) (citing *Boddie v. City of Columbus, Miss.*, 989 F.2d 745, 747 (5th Cir. 1993)); *Hitt v. Connell*, 301 F.3d 240, 246 (5th Cir. 2002).  For Plaintiff to prevail on his procedural due process claim, he must establish the deprivation of a protected interest without first receiving "notice and opportunity for hearing appropriate to the nature of the case." *Greene v. Greenwood Pub. Sch. Dist.*, 890 F.3d 240, 242 (5th Cir. 2018) (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985)).

**B.      Official Capacity Claims**

The Court first addresses Defendants' argument that Plaintiff's claims against the Board member Defendants in their official capacities are duplicative of those asserted against RGCCISD, and subject to dismissal.  (Dkt. No. 6 at § III(A)).  It is well-settled that a § 1983 suit against a governmental official in his or her official capacity is a suit against the governmental unit itself. *See, e.g., Bennett v. Pippin*, 74 F.3d 578, 584-85 (5th Cir. 1996).  Since Plaintiff's allegations giving rise to his § 1983 claims against RGCCISD also form the basis for his official capacity claims, the latter are duplicative and the Court will dismiss them for failure to state an independent claim for relief. *See Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001) (in § 1983 case, approving of dismissal of allegations against municipal and other governmental officers that "duplicate claims against the respective governmental entities themselves").

**C.      Municipal Liability Claims**

The Court next turns to Defendants' argument that Plaintiff fails to identify any action by the requisite "policymaker" that would subject RGCCISD to liability.  (Dkt. No. 6 at § III(A);

---

2011) ("Substantive due process 'bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them.'") (quoting *Marco Outdoor Advert., Inc. v. Reg'l Transit Auth.*, 489 F.3d 669, 673 n.3 (5th Cir. 2007)).

*see also* § II(B)).  Precedent has long established that a municipality or other local governmental entity, such as RGCCISD, cannot be held liable under § 1983 on the theory of respondeat superior; rather, to establish municipal liability, Plaintiff must show: "(1) an official policy (or custom), of which (2) [RGCCISD's] policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 412 (5th Cir. 2015) (quoting *Monell*, 436 U.S. at 691); *Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010) (quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)).  A municipality may be liable if the official policy itself is unconstitutional, or if the policy was adopted or maintained by the policymaker "with deliberate indifference as to its known or obvious consequences[.]"  *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 309 (5th Cir. 2004) (quoting *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 407 (1997)) (internal quotations omitted). "Importantly, '[t]he policymaker must have final policymaking authority.'"  *Fennell*, 804 F.3d at 413 (quoting *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003)).  Under Texas law, which determines the question here, final policymaking authority rests with RGCCISD's Board of Trustees.  *Id.* (quoting same); *see also* TEX. EDUC. CODE § 11.151(b) ("The trustees as a body corporate have the exclusive power and duty to govern and oversee the management of the public schools of the district.").

Defendants broadly assert that Plaintiff's Complaint fails to identify "any actions taken by the District's Board of Trustees that adversely impacted his employment (by actually terminating or nonrenewing his contract) or that violated his rights under the First or Fourteenth Amendments," or "any allegedly unconstitutional policy or custom adopted by or promulgated by the Board of Trustees."  (Dkt. No. 6 at § III(A)).  However, in the Court's view, Plaintiff's

Complaint sufficiently identifies the adverse action as the termination or nonrenewal of his employment at an October 2018 Board meeting, in alleged retaliation for his political association with Team Hope and without giving him the requisite pre-termination/nonrenewal notice and opportunity to be heard,[6] and attributes it to the Board majority—all members of a rival political group—through which the Board itself acted.  *See* TEX. EDUC. CODE § 11.051 (a-1) ("The board of trustees may act only by majority vote of the members present at a meeting held in compliance with Chapter 551, Government Code, at which a quorum of the board is present and voting.").[7]  Since "a single decision may constitute municipal policy in rare circumstances when the…entity possessing final policymaking authority for an action performs the specific act that forms the basis of the § 1983 claim," and because the unconstitutional animus of the majority of a multi-member board may be imputed to the board itself, Plaintiff's allegations uncover a plausible basis for holding RGCCISD liable.  *Webb v. Town of Saint Joseph*, 925 F.3d 209, 215 (5th Cir. 2019) (quoting *Davidson v. City of Stafford*, 848 F.3d 384, 395 (5th Cir. 2017), as revised (Mar. 31, 2017)); *Griggs v. Chickasaw Cty., Miss.*, 930 F.3d 696, 704 (5th Cir. 2019).  As Defendants' cited authority acknowledges, an official policy may also consist of "[a] persistent, widespread practice of [district] officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents [district] policy."  (Dkt. No. 6 at § II(B)); *Eugene v. Alief Indep.*

---

[6]  Defendants do not, in the context of moving to dismiss Plaintiff's claims of municipal liability, explain how Plaintiff's allegations fail to state a First Amendment or due process claim.

[7]  Plaintiff's response also takes the position that "Defendants' practice of exerting political pressure over Plaintiff constitutes official policy," but Plaintiff's Complaint attributes the pre-termination/nonrenewal "pressure" to Garcia, not to the Board through its majority.  (Dkt. No. 7 at ¶ 34).  Also, Plaintiff does not explain how this pressure, even if exerted by the Board, qualifies as an adverse action for purposes of his First Amendment retaliation claim, or how it deprived him of due process.  In the Court's view, the alleged pressure placed on him to support Team Kid's Choice merely serves as support for his allegations of an unconstitutional animus for the true adverse action—the termination or nonrenewal of his employment.

*Sch. Dist.*, 65 F.3d 1299, 1304 (5th Cir. 1995) (quoting *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992)) (emphasis added) (alterations in original).  To this end, Plaintiff further alleges a pattern of politically-motivated employment decisions, accomplished by the Board through its majority, to which Plaintiff fell victim.  *See* (Dkt. No. 7 at ¶ 35).  In sum, Plaintiff's pleading adequately identifies an official policy and/or custom that served as the moving force behind the alleged constitutional violations.  Therefore, the Court will not dismiss Plaintiff's claims of municipal liability on the grounds asserted.

## C.    Individual Capacity Claims

With respect to Plaintiff's claims against the Board member Defendants in their individual capacities, Defendants first target Plaintiff's claims against Velasquez and Babineaux, arguing that Plaintiff fails to allege "anything that either of these individual defendants did." (Dkt. No. 6 at § III(B)).  Defendants assert that "Plaintiff's only factual allegation regarding these individual defendants is that they belong to a political group that he supported in the past and then ceased supporting," and that "membership in a political group does not support any of Plaintiff's claims against them[.]"  (*Id.*).  Defendants also assert, without more, that "Plaintiff fails to allege that Defendant Garcia exercised his authority, or purported authority, as an individual board member in a manner that actually resulted in any adverse employment [action]." (*Id.*).  Defendants fail to consider Plaintiff's additional allegations that Velasquez and Babineaux, along with Garcia, not only belonged to the political group Team Kid's Choice, but comprised the Board majority that effectuated the termination or nonrenewal of his employment, in alleged retaliation for his membership in a rival political group and without affording him the pre-termination/nonrenewal process due.  To establish individual liability under § 1983, a plaintiff "must identify defendants who were either personally involved in the constitutional

violation or whose acts are causally connected to the constitutional violation alleged." *Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir. 1999).  The Court recognizes that no Board member could have accomplished the termination or nonrenewal of Plaintiff's employment, either alone or in concert, absent the authority given to the Board itself.  *See* Tex. Educ. Code § 11.051(a-1).  However, taking Plaintiff's allegations as true, the individual Defendants were certainly involved in the alleged unconstitutional employment decision, and their actions bore a causal relationship to it—they formed the Board majority who accomplished the decision.  Defendants have pointed to no authority, and the Court can locate none, foreclosing a claim of individual liability under these circumstances.  In *Anderson*, the Fifth Circuit held that the plaintiff, a longtime school district employee, had sufficiently pleaded the individual board member defendants' personal involvement in "specifically enumerated decisions that adversely impacted his employment in violation of his constitutional rights," even though the decisions were made "in closed meetings that precluded [the plaintiff] from knowing, prior to discovery, whether each defendant voted for or dissented from those decisions." *Anderson*, 184 F.3d at 443-44.  Plaintiff here alleges at least as much personal involvement, and therefore the Court declines to dismiss his individual capacity claims on the bases asserted.

## D.    Due Process Claims

In the alternative, Defendants move to dismiss Plaintiff's due process claims, first on the grounds that his allegations fail to identify a "property right that entitles him to due process." (Dkt. No. 6 at § III(C)).[8]  As Defendants concede, resolution of this argument turns on whether

---

[8]  Defendants do not move to dismiss Plaintiff's due process claims predicated on a protected liberty interest, "which is viewed as including an individual's freedom to work and earn a living," and is infringed "only when the employee is discharged in a manner that creates a false and defamatory impression about him and thus stigmatizes him and forecloses him from other employment opportunities. *Cabrol v. Town of Youngsville*, 106 F.3d 101, 107 (5th Cir. 1997) (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 572 (1972)); *Bledsoe vs. City of Horn Lake, Miss.*, 449 F.3d 650, 653 (5th Cir. 2006) (quoting *White*

Plaintiff's employment was terminated or nonrenewed—terms that Plaintiff's pleading uses interchangeably, but that have differing implications with respect to his due process claims. *See* (*id.* at § II(A), III(C)). "To enjoy a property interest in employment, an employee must 'have a legitimate claim of entitlement' created and defined 'by existing rules or understandings that stem from an independent source such as state law[.]'" *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Roth*, 408 U.S. at 577). Under Texas law, a presumption exists that employment is at will unless that relationship "has been expressly altered by contract or by express rules or policies limiting the conditions under which an employee may be terminated." *Id.* at 544 (citing *Muncy v. City of Dallas*, 335 F.3d 394, 398 (5th Cir. 2003)). Plaintiff's response attaches a copy of his employment contract with RGCCISD—a document incorporated into the complaint through its repeated references to the contract, and therefore properly considered at this stage—stating RGCCISD's agreement to employ him as a truancy officer and describing the term of employment as follows: "You will be employed on a 11-month basis for the 2014-2017 school year(s), according to the hours and dates set by the District as they exist or may hereafter be amended." (Dkt. No. 7, Exh. A at ¶ 2). As Defendants point out, the Texas Education Code provides that "[a] teacher does not have a property interest in a contract beyond its term." TEX. EDUC. CODE § 21.204(e); (Dkt. No. 6 at § III(C)). However, Plaintiff correctly draws the Court's attention to another section of the Code, which provides in relevant part as follows:

> (a) Not later than the 10th day before the last day of instruction in a school year, the board of trustees shall notify in writing each teacher whose contract is about to expire whether the board proposes to renew or not renew the contract. The notice must be delivered personally by hand delivery to the teacher on the campus at which the teacher is employed, except that if the teacher is not present on the campus on the date that hand delivery is attempted, the notice must be mailed by prepaid certified mail or delivered by express delivery service to the teacher's address of record with the district. Notice that is

*v. Thomas*, 660 F.2d 680, 684 (5th Cir. 1981)) (internal quotations omitted).

postmarked on or before the 10th day before the last day of instruction is considered timely given under this subsection.

(b) The board's failure to give the notice required by Subsection (a) within the time specified constitutes an election to employ the teacher in the same professional capacity for the following school year.

TEX. EDUC. CODE § 21.206(a), (b); (Dkt. No. 7 at ¶ 20). To recap, if the board intends not to renew the contract of a teacher whose contract is about to expire, it must notify the teacher "[n]ot later than the 10th day before the last day of instruction in a school year," and its failure to do so equates to an election to extend the contract term through the following year. *See Wolber v. Round Rock Indep. Sch. Dist.*, No. 1:19-CV-602-AWA, 2020 WL 1536384, at *2 (W.D. Tex. Mar. 31, 2020) (under § 21.206(b), teacher's contract "automatically rolls over into the next year" if board fails to provide notice required by subsection (a)). Plaintiff's allegations that RGCCISD placed him on administrative leave with pay from November 2017 through October 2018, the month of the alleged termination or nonrenewal and letter giving notice of it, constitutes sufficient indication that the Board had already made the election to employ Plaintiff for the 2018-2019 school year when it decided to end that employment. The Court takes judicial notice of the fact that the days of instruction for the RGCCISD 2018-2019 school year ran from August 2018 through May (or at the latest June) 2019,[9] in which case the letter delivered to Plaintiff in October 2018 could only have served as a notice of nonrenewal of his employment for the *following* year. Otherwise, it could only have related to the termination of his continued employment, in which he had a protected property interest by operation of Texas law.

Defendants next assert that, even if Plaintiff's allegations support the existence of a property interest, he fails to allege that Defendants prevented him from invoking the

---

[9]     The calendar includes one week of State Assessments in June 2019. *See* https://www.rgccisd.org/167737_2 at 2018-2019 School Calendar, EB (Local) Board Approved: April 11, 2018.

administrative remedies available to him.   (Dkt. No. 6 at § III(C); *see also* § II(A)).   "An essential principle of due process" is that the deprivation of a protected interest "'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'"   *Greene*, 890 F.3d at 242 (quoting *Loudermill*, 470 U.S. at 542).   "In the context of public employment, 'this principle requires some kind of a hearing prior to the discharge of an employee who has a constitutionally protected property interest in his employment.'"   *Id.* (quoting same) (alterations and some internal quotations omitted).   "The formality and procedural requisites for a constitutionally-adequate pre-termination hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings."   *Id.* (quoting *Loudermill*, 470 U.S. at 545) (alterations omitted).   "At a minimum, however, an employee facing termination must be given 'notice and an opportunity to respond' *before* the termination takes effect."   *Id.* (quoting *Loudermill*, 470 U.S. at 546) (emphasis in original); *see* (Dkt. No. 7 at ¶ 30).   The employee's failure to pursue post-deprivation remedies does not affect his entitlement to pre-deprivation process.   *Greene*, 890 F.3d at 243 (quoting *Chiles v. Morgan*, 53 F.3d 1281, 1995 WL 295931, at *1-2 (5th Cir. 1995)); *see* (Dkt. No. 7 at ¶ 31).

Defendants submit that the Texas Education Code provides the pre-deprivation process due by: (1) requiring the board, if it votes to propose termination, to deliver written notice to the teacher of the proposed decision; and (2) affording the teacher an opportunity to obtain a hearing by requesting it with the Commissioner of Education "not later than the 15th day after the date the teacher receives written notice of the proposed action."   (Dkt. No. 6 at § II(A)); TEX. EDUC. CODE §§ 21.251, 21.253(a).[10]   In arguing that Plaintiff "fails to allege any facts demonstrating that he was unable to avail himself of these procedures," Defendants overlook that Plaintiff

---

[10]   "The teacher must provide the district with a copy of the request and must provide the commissioner with a copy of the notice."   TEX. EDUC. CODE § 21.253(a).

characterizes the notice he received as one that effectuated, rather than proposed, his termination. (Dkt. No. 6 at § III(C)).  Regardless of whether he then had, but failed to properly avail himself of, the opportunity for a post-termination hearing,[11] his allegations that he had no opportunity to be heard prior to his termination states a claim for the deprivation of his procedural due process rights.  *See Greene*, 890 F.3d at 243 (holding same).  Therefore, the Court must deny Defendants' request to dismiss this claim against RGCCISD and the Board member Defendants in their individual capacities.

### E.    Request for Punitive Damages

Defendants also target Plaintiff's request for punitive damages on the asserted basis that "a federal court may not award punitive damages against a Texas public school district."  (Dkt. No. 6 at § III(D) (citing *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) (holding that municipality is immune from punitive damages under § 1983)).  In response, Plaintiff disavows any request for punitive damages against RGCCISD, claiming that he instead pursues this relief against the individual Defendants.  (Dkt. No. 7 at ¶ 38).  In the absence of any argument from Defendants as to why Plaintiff fails to state a claim for punitive damages against Defendants sued in their individual capacities,[12] the Court will dismiss only Plaintiff's request for punitive damages against RGCCISD.

### V.    Conclusion

For the foregoing reasons, the Court hereby **ORDERS** that Defendants' Rule 12(b)(6)

---

[11]  To this end, Plaintiff alleges that he wrote to the RGCCISD Superintendent asking for "reinstatement," and received no response or hearing on the matter.

[12]  *See Smith v. Wade*, 461 U.S. 30, 36 n.5, 56 (1983) (noting that in *Newport*, *supra*, "we held that a municipality (as opposed to an individual defendant) is immune from liability for punitive damages under § 1983," and holding in case before it that "a jury may be permitted to assess punitive damages [against an individual defendant] in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others").

Motion to Dismiss is **GRANTED** to the extent that it requests dismissal of Plaintiff's claims against Defendants Garcia, Velasquez, and Babineaux in their official capacities, and against Defendant RGCCISD for punitive damages, and these claims are **DISMISSED** with prejudice. Otherwise, the Motion is **DENIED**.

      SO ORDERED this 9th day of October, 2020, at McAllen, Texas.

_____

Randy Crane
United States District Judge